UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


LOUISIANA DEPARTMENT OF
AGRICULTURE AND FORESTRY            CIVIL ACTION

VERSUS                               NUMBER 09-996-BAJ-SCR

LOUISIANA RAILROAD ASSOCIATION

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, October 1, 2010.

                                    _[signature]_
                                    STEPHEN C. RIEDLINGER
                                    UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LOUISIANA DEPARTMENT OF
AGRICULTURE AND FORESTRY          CIVIL ACTION

VERSUS          NUMBER 09-996-BAJ-SCR

LOUISIANA RAILROAD ASSOCIATION

### MAGISTRATE JUDGE'S REPORT

Before the court is a Motion to Remand filed by plaintiff Louisiana Department of Agriculture and Forestry (hereafter, "LDAF"). Record document number 7. The motion is opposed by the defendant, Louisiana Railroad Association (hereafter, "LRA").[1]

### Background[2]

A 2008 enactment of the Louisiana legislature, LSA-R.S. 48:390 H.(Act No. 773), which is part of the statute entitled "Railroad grade crossing improvement and elimination," is the subject of this suit. It states in relevant part as follows:

> H. (1) A railroad corporation owning or operating a railway in this state, which is constructed across the

---

[1] Record document number 11. Before the oral argument held on the motion the court identified issues to be addressed by the parties. Record document number 12. Plaintiff and defendant each filed a supplemental memorandum in response to the order. Record document numbers 15 and 16.

[2] The undisputed facts included in this report are taken from the pleadings, exhibits and statements at oral argument. Record document number 18, Transcript of Oral Argument.

land of any person leaving a portion of the land of such person on either side of its right-of-way, shall, when ordered to by the commissioner of the Department of Agriculture and Forestry, allow said crossing to remain open at a private rural residence or agricultural crossing or other means of access over its right-of-way.

(2) The Department of Agriculture and Forestry shall promulgate rules and regulations for the implementation of this Subsection no later than January 1, 2009.

Section 2 of Act No. 773 provides that:

If a railroad corporation has closed a private crossing which is the only access to a private rural residence or which is a private agricultural crossing between January 1, 2000 and August 15, 2008, it shall, when ordered by the commissioner of the Department of Agriculture and Forestry, immediately restore the private crossing and keep it in good repair.

The LDAF was required by the statute to promulgate rules and regulations for the implementation of subsection H no later than January 1, 2009.[3] It has never done so. As of this date it has only drafted preliminary proposed rules, which were received and commented on by the LRA.[4] On October 16, 2009 the LDAF filed a Petition for Declaratory Judgment in state court under La. C.C.P. Article 1872[5] and named the LRA as the defendant.

---

[3] LSA-R.S. 48:390 H.(2).

[4] Record document number 15, LRA exhibit A; record document number 16, LDAF exhibit A.

[5] This state procedural article states in relevant part: A person...whose rights ... are affected by a statute,... may have determined any question of construction or validity arising under the ... statute,... and obtain a declaration of rights, status, or other legal relations thereunder.

The LDAF alleged in its petition that the LRA is an unincorporated trade association that represents the interests of its members, Class I railroads and several short line railroads, in legislative and regulatory matters.[6] The LDAF alleged further that the LRA filed a suit in state court challenging another statute, LSA-R.S. 48:394, which prohibits any railroad operating in Louisiana from closing or removing a private railroad crossing without first requesting permission from the Louisiana Public Service Commission.  According to the LDAF, the suit involving LSA-R.S. 48:394 alleges federal preemption as a legal basis, and demonstrates that the railroads challenge the validity of any law regarding the opening or closing of private railroad crossings.  Therefore, the declaratory judgment action is necessary in order to determine the validity of LSA-R.S. 48:390 H. and the authority of the LDAF to promulgate regulations to enforce it.  The LDAF sought a judgment declaring that LSA-R.S. 48:390 H. is enforceable and not preempted by federal law, and that rules and regulations can be established for the implementation of the statute.[7]

The LRA removed the case alleging subject matter jurisdiction based solely on complete federal preemption.  The LRA alleged that there is federal question jurisdiction under 28 U.S.C. § 1331

---

[6] Record document number 1-2, Petition for Declaratory Judgment, ¶ II.

[7] *Id.*, ¶¶ III, VII-IX.

4

because the state law the LDAF seeks a declaration to enforce is facially or completely preempted by the Interstate Commerce Commission Termination Act of 1995 (ICCTA).[8]

The LDAF then filed this Motion to Remand taking the opposite position on preemption. The LDAF asserted that LSA-R.S. 48:390 H. is not completely preempted by the ICCTA, and that the LRA cannot satisfy its burden of establishing federal question subject matter jurisdiction in this case.

After review of the record and the Motion to Remand, an order for oral argument was issued with a list of questions to be addressed by the parties. One of the questions raised by the court was whether the record supported the constitutional requirement under Article III, § 2 that there must be an actual "case or controversy" for the court to have subject matter jurisdiction.[9]

Consideration of the record, the parties' arguments and the applicable law, supports finding the LRA has not shown that the constitutional standing and ripeness requirements are satisfied, and therefore it is not proper for the court to exercise subject matter jurisdiction under Article III. In light of this conclusion

---

[8] Record document number 1, Notice of Removal, ¶¶ 7-9. The remaining paragraphs of the Notice of Removal essentially cited the cases and reasoning on which the LRA relied to support its position that LSA-R.S. 48:390 H. is completely preempted by the ICCTA.

[9] In response to the court's question on standing, the LDAF maintained that the court lacks subject matter jurisdiction, but did not address or analyze the standing issue.

the court cannot decide the question of whether LSA-R.S. 48:390 H. is completely preempted by the ICCTA.

## Applicable Law

When a declaratory judgment action filed in state court is removed to federal court, that action is, in effect, converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. *Disanti v. Mortgage Electronic Registration Systems, Inc.*, 2010 WL 3338633 (E.D.Tex. Aug. 24, 2010); *Little Giant Mfg. Co. v. Chromalox Indus.*, 1996 WL 363026 (E.D. Tex. June 26, 1996).[10]  The federal Declaratory Judgment Act states in relevant part:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  Section 2201 does not expand the jurisdiction of the federal courts or create substantive rights.  It is only a procedural device that enhances the remedies available in the adjudication of a case or controversy. *In re Asbestos Litigation*, 90 F.3d 963, 991 (5th Cir. 1996).

The Fifth Circuit interprets the § 2201(a) "case of actual

---

[10] *See*, 14C Wright, Miller, Cooper & Steinman, *Federal Practice and Procedure*, § 3738, pp. 695-98 (4th ed. 2009)(removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters).

controversy" requirement to be co-terminus with Article III's "case or controversy" requirement. *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006); *Texas v. West Publ'g Co.*, 882 F.2d 171, 175 (5th Cir. 1989). Article III, § 2 of the United States Constitution limits federal court jurisdiction to cases and controversies. *Massachusetts v. E.P.A.*, 549 U.S. 497, 516, 127 S.Ct. 1348, 1452 (2007). Thus, federal courts cannot consider the merits of a case unless it presents an actual controversy as required by Article III of the Constitution and the Declaratory Judgment Act. *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008). The case or controversy requirement comprises several doctrines of justiciability – standing, ripeness, mootness and political question. These doctrines provide the fundamental limits on federal judicial power in our system of government. *Id.* When a party cannot establish the standing requirements imposed by Article III, courts lack subject matter jurisdiction over the case. *Bell v. American Traffic Solutions, Inc.* 371 Fed.Appx. 488, 489 (5th Cir. 2010); *Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir.2009).

Standing and ripeness are two doctrines of justiciability that insure federal courts will only decide cases or controversies. *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005). The constitutional minimum of standing contains three elements: injury-in-fact, causation, and redressability. *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130 (1992); *Massachusetts v. EPA*, 549 U.S. at 517, 127 S.Ct. at 1453. An injury in fact is an invasion of a legally protected interest which is concrete and particularized, and either actual or imminent, not conjectural or hypothetical. *Id.* The standing question has a close affinity to the question of ripeness, that is, whether the harm asserted has matured sufficiently to warrant judicial intervention. Ripeness often overlaps with standing, particularly in the shared requirement that the injury be imminent rather than conjectural or hypothetical. When the case is abstract or hypothetical lack of ripeness should result in dismissal. *Barbour*, *supra.* The ripeness doctrine guards against premature adjudication by separating matters that are hypothetical or speculative from those that are poised for judicial review. *LeClerc*, *supra*, citing, *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000).

Declaratory judgments are typically brought before a completed injury-in-fact has occurred, but they still must be limited to the resolution of an actual controversy. In other words, declaratory judgment actions in the nature of pre-enforcement challenges cannot be heard unless the case is ripe for review. *Id*. Applying the ripeness doctrine in the declaratory judgment context, the following standard was set forth by the Fifth Circuit in *New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583 (5th Cir. 1987):

> A court should dismiss a case for lack of "ripeness" when the case is abstract or hypothetical. The key considerations are the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.

*Id.; United Transp. Union*, *supra*; *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895-6 (5th Cir. 2000). Many courts have recognized that applying the ripeness doctrine in the declaratory judgment context presents a unique challenge. This is because the declaratory action contemplates an "ex ante determination" of rights that is in some tension with traditional notions of ripeness. Nevertheless, a declaratory judgment action like any other action must be ripe in order to be justiciable. *Orix Credit Alliance*, 212 F.3d at 896.

An association may have standing solely as the representative of its members even in the absence of injury to itself. *National Treasury Employees Union v. U.S. Dept. of Treasury*, 25 F.3d 237, 241 (5th Cir. 1994); *Hunt v. Wash. State Apple Adver. Comm's*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441 (1977). In order to have representational standing, an association must satisfy three requirements: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.* The possibility of

9

representational standing does not eliminate or attenuate the constitutional requirement of a case or controversy.  The association must still show that its members or any one of them have standing, in other words, that they are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.  *Id.; Texas Cable & Telecommunications Association* v. *Hudson*, 265 Fed.Appx. 210 (5th Cir. 2008).

## Analysis

**The LRA Has Representational Standing**

The record establishes that the LRA is a trade association and its members are Class I and short line railroads operating in Louisiana.  The LRA represents its members in legislative and regulatory matters.  The state law that the LRA is challenging as completely preempted by federal law pertains to railroad corporations owning or operating railways and railroad crossings in Louisiana.  Thus, the legal position taken by the LRA seeks to protect interests that are related to the purpose of the association.  It is equally apparent that without the LRA, one of its member Louisiana railroads could bring or defend an action on grounds that federal law completely preempts LSA-R.S. 48:390 H.  However, given the legal position on which the LRA is defending this suit the participation of individual members is not required.

**LRA Has Not Shown a Justiciable Case or Controversy**

The LRA, as the removing party asserting federal question jurisdiction, has the burden of showing a case or controversy required by Article III and the Declaratory Judgment Act.[11] The LRA has failed to demonstrate that any of its member railroads have suffered an injury that is concrete and particularized, and either actual or imminent, only as a result of the enactment of LSA-R.S. 48:390 H.

In its supplemental brief and at oral argument the LRA relied on the following arguments to show that the requirement of a case or controversy is satisfied: (1) the very enactment and existence of the statute makes the complete preemption issue raised in this declaratory judgment action ripe for review; and (2) the mere existence of the law threatens to interfere with activities of the railroads authorized by the Surface Transportation Board.

The LRA's arguments are legally and factually unsupported, and ultimately they are unpersuasive. The LDAF alleged only that its declaratory judgment suit was necessary because it has a duty to enforce the law and promulgate regulations, and the LRA's state court suit against the Public Service Commission challenging the validity of LSA-R.S. 48:394 shows that Louisiana railroads will

---

[11] See, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S.Ct. 1854, 1861 n. 3 (2006); *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136 (party invoking jurisdiction has burden of establishing elements of standing).

challenge any law related to the opening or closing of private railroad crossings. The allegations contained in the LRA's Notice of Removal focused on its complete preemption arguments. The LRA essentially alleged that LSA-R.S. 48:390 H. is completely preempted because its effects would frustrate railroad operations and impose an economic burden, making it a per se unreasonable interference with interstate commerce. Neither the state court petition nor the notice of removal alleges that any Louisiana railroad has experienced an actual injury or an immediate threat of injury as a result of the enactment or implementation of LSA-R.S. 48:390 H. The record developed after these pleadings offers nothing more to support the LRA's position that the complete preemption issue is ripe for decision.

The LRA did not cite any controlling or persuasive authority to support its argument that bare enactment of LSA-R.S. 48:390 H. makes this case ripe for judicial review. While it is true that in declaratory judgment actions a case is generally ripe if any remaining questions are purely legal, because the statute imposes no initial obligation or restriction on a railroad, the LRA's complete preemption argument in this case requires at least some factual development. As the LRA acknowledges, on its face LSA-R.S. 48:390 H. does not state that Louisiana railroads must apply to the LDAF and get permission or pre-clearance to close a crossing. Instead, the LRA's complete preemption argument relies on its

assertion that the nature of the law as enacted - and as it believes it will be enforced - will have the effect of giving the LDAF permitting or pre-clearance authority, and therefore the power to regulate rail transportation.[12]  Thus, in the absence of final regulations, procedures or orders by the LDAF to enforce the statute, or which describe how it will enforce the statute, the nature of the law in relation to rail transportation cannot be accurately predicted and the court cannot determine whether the law is completely preempted under *New Orleans & Gulf Coast Ry.Co. v. Barrios* and *Franks*.[13]

No requests have been made, no orders have been issued, nor has any other action been taken by the LDAF to enforce the statute. The only actions taken by the LDAF since the statute was enacted have been to file the Petition for Declaratory Judgment and write a preliminary draft of proposed regulations.  The final regulations may look very different from those initially proposed.  Without final rules and regulations, or any other steps to carry out the law, the LRA's argument that the effects/results of the legislation make it a permitting or pre-clearance statute are based on

---

[12] Tr. pp. 47-53, 55.

[13] *New Orleans & Gulf Coast Ry.Co. v. Barrios*, 267 F.3d 439 (5th Cir. 2001); *Franks Investment Co., LLC v. Union Pacific Railroad Co.*, 593 F.3d 404, 409-11 (5th Cir. 2010)(*en banc*).

conjecture rather than facts.[14]

Similarly, the LRA has not pointed to anything in the record to show a concrete, particularized, actual or imminent injury resulting only from the enactment of LSA-R.S. 48:390 H. The LRA stated in its memorandum that the railroads have stopped closing private crossings until the legal issues presented by this case, and by other statutes recently passed by the legislature have been resolved, and because of fear of violating Louisiana law.[15] However, the LRA did not provide any affidavits or other evidence to support these assertions, or to explain how voluntary decisions made by unidentified railroads constitute a concrete, particularized, actual or imminent injury caused by enactment of the statute.

---

[14] In its responses to the court's list of questions for oral argument, the LDAF stated that it has not issued any order to a railroad to keep a crossing open or reopen a closed crossing, and no landowner has sought an order to keep open or reopen a crossing. Record document number 16, LDAF responses to question numbers 8 and 9. Counsel for LDAF also stated at oral argument that no railroad has been ordered to do anything related to closing of a crossing. Tr. p. 33. In response to these two questions, the LRA also did not offer any facts to show that any orders have been requested or issued. Record document number 15, LRA responses to question numbers 8 and 9.

With regard to the process of establishing rules and regulations, it is clear from the statements made at oral argument that the LDAF voluntarily chose not to comply with the deadline set in the statute, and pending resolution of its action for declaratory judgment, voluntarily chose not to spend any time or effort to develop or establish final rules and regulations. Tr. pp. 6, 15-18, 20-24.

[15] Record document number 15, LRA Memorandum in Opposition, pp. 10-12.

The LRA also argued that the affidavits it submitted establish the threat to railroad activities.[16]  However, the substance of the affidavits do not support this argument.  The affidavits in large part explain how removing or temporarily closing private railroad crossings is sometimes necessary to carry out certain railroad operations.  In the concluding paragraphs the affiants give their opinions on what they think the statute appears to require, and state their belief that it will affect the development of the railroad's business.  These opinions are not supported by any specific facts, and do not rise above the level of speculation about the impact of LSA-R.S. 48:390 H.  The opinions and other information in the affidavits do not articulate any basis to find that enactment of the statute has caused any actual injury or imminent threat of injury to an LRA member railroad.[17]

Finally, under *NOPSI v. Council of New Orleans* the court should consider the hardship to the parties resulting from withholding review.  If review is withheld the LDAF may have to resume the process of developing rules and regulations, and

---

[16] Record document number 11-1, Affidavit of Paul Rathgeber, Manager of Industry and Public Projects for Union Pacific Railroad, LRA exhibit A; record document number 11-2, Affidavit of Lyn Hartley, Director of Public Projects for BNSF Railway Company, LRA exhibit B.  The content of these affidavits is almost identical except for the name and position of the individuals providing the affidavit.

[17] Rathgeber and Hartley did not state that they work for railroads that are members of the LRA.  For purposes of this motion the court assumes that their employers are LRA members.

establishing the final regulations for implementing the law.[18] It is difficult to conclude that this a legally cognizable hardship resulting from withholding review because it is something that the Louisiana legislature required the LDAF to do, and complete, long ago. Similarly, it is difficult to conclude that a railroad's voluntary decision to not close a crossing is a legally cognizable hardship resulting from withholding review.

## Conclusion

The doctrine of ripeness distinguishes matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review. *United Transp. Union*, 205 F.3d at 857. The LRA's argument that its pre-enforcement challenge to LSA-R.S. 48:390 H. is ripe for review is based on conjecture and speculation - about how it will be enforced and what injuries it will cause. This lack of ripeness means that the court does not have subject matter jurisdiction, and given the language of the statute, the bare enactment of it is not sufficient to establish the existence of an Article III case or controversy.

## Recommendation

It is the recommendation of the magistrate judge that the

---

[18] Whether the LDAF will proceed with issuing regulations is also somewhat speculative since it already failed to do so within the time set by the Louisiana legislature. Should it proceed with issuing regulations, when it might conclude that process is also somewhat speculative.

Motion to Remand filed by plaintiff Louisiana Department of Agriculture and Forestry be granted.

Baton Rouge, Louisiana, October 1, 2010.

*Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE